(R.D. 11707)

U.S. Divers Co.
Wiley } v. United States

Entry No. 253683.

(Decided June 2, 1970)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Ford, Judge: The above enumerated appeal for reappraisment presents the question of the proper dutiable value of the following items:

    2400 masks junior safety glass
    1000 masks equipressure
    1886 masks luxe safety glass yellow
    2442 masks luxe safety glass blue

Appraisement was made on the basis of foreign value under the provisions of section 402a(c), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The appraised values were $0.98 each for the junior masks and $1.28 each for the remaining items enumerated above.

Plaintiffs contend the basis of appraisement is erroneous as the merchandise is not enumerated on the final list of the Secretary of the Treasury, 93 Treas. Dec. 14 T.D. 54521. The proper basis, plaintiffs claim, is export value under section 402(b), and that said value is the invoice value. This position is based upon the decision of this court in *U.S.D. Importing Co. et al.* v. *United States*, 44 Cust. Ct. 360, Abstract 63864 (1960), wherein it is contended the identical merchandise was

held not to be goggles within the purview of paragraph 225, Tariff Act of 1930, as modified by T.D. 54108 or T.D. 51802. The final list provides as follows:

> Goggles, and frame, mountings, and parts thereof, to be used in conjunction with underwater swimming, and valued over $2.50 per dozen.

Plaintiffs accordingly contend that the imported articles are masks and not goggles within the common meaning of that term and following the rationale in *National Carloading Corporation* v. *United States*, 53 CCPA 57, C.A.D. 877 (1966), they are not on the final list, *supra*. Therefore, it is contended the basis of appraisement of foreign value is incorrect.

Defendant, on the other hand, contends the mere fact that the court held the classification to be erroneous in Abstract 63864, *supra*, does not affect the final list enumeration. To do so would negate the intent of Congress which delegated the authority to promulgate the list to the Secretary of the Treasury. This aspect was thoroughly considered in the *National Carloading* case, *supra*, and rejected. In that case, the importation consisted of spark plugs which this court in *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136 (1960), held not to be parts of automobiles. The same basic argument was considered by the court in the *National Carloading* case, *supra*, and in arriving at its conclusion, the following observation was made:

> Relying on Bureau of Census reports reflecting customs practice in 1958 of classifying spark plugs as automobile parts, the court concluded that the Secretary used words that were adequate to place spark plugs on the final list "according to the understanding of those who would read the list."

> The only words we find that may be relied on to fulfill this requirement of adequacy are the words "Automobile parts, finished." In this connection the court stated:

>> To any reasonable person, in 1958, interested in the import trade in spark plugs, the words on the final list "Automobile parts, finished," either denoted spark plugs among other things, or at least put him on notice that the Secretary might so intend.

>> If the Secretary intended to designate spark plugs, and if what he published was so understandable at the time, this court is not going to be led off into any tangential inquiry as to whether he used the right magic words. However, we may regret that *the Secretary did not provide more effective guides to his intent at the time*. [Emphasis quoted.]

> We find of record no publication by the Secretary which would clarify or be conducive to the understanding of those who would

read the list that it included spark plugs. He not only did not use the "right magic words" but he employed no words of clarification. To say that he "did not provide more effective guides as to his intent" is an inadequate characterization of the fact that he provided no guides.

In the case at bar there is no evidence that the Secretary of the Treasury, in providing for goggles, intended the merchandise at bar to be encompassed within the language employed. If the intent to encompass within the common meaning of the term goggles had been established as including the masks involved, certainly the intent would be carried out. In the classification case, Abstract 63864, *supra*, the meaning of the term was found not to encompass masks. I do not believe the common meaning of the phrase goggles, etc., contained in the final list, *supra*, ever embodied masks. Accordingly, appraisement on the basis of foreign value is erroneous.

Since the merchandise is not enumerated on the final list, *supra*, first consideration for the basis of appraisement is export value as defined in section 402(b), *supra*. The evidence adduced by plaintiff with respect to export value was in the form of oral testimony of one Michel Ragot, manager of the production and control department of the importer, and an affidavit of Mr. René Cavalero, president and manager of the French manufacturer. It appears that the importer herein has an exclusive agreement with the manufacturer for the sale of its equipment in the Western Hemisphere. According to the affiant, since 1958, his company's sales for home consumption have been the same as for export except that home consumption sales have the addition of a French Production Tax known as T.V.A. Tax. The masks imported are the same as those involved in Abstract 63864, *supra*.

Based upon the record, it is clear that plaintiffs are selected purchasers within the meaning of section 402(f)(1)(B), Tariff Act of 1930, as amended, *supra*. The issue of whether or not there was an export value for the merchandise under consideration depends upon the existence of sales in the ordinary course of trade at prices which fairly reflect the market value of the merchandise.

In the case of *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964), the court made the following comment:

> The Appellate Term, one judge dissenting, disagreed with the view thus expressed by the trial judge, stating, in substance, that normal conditions and practices in the trade, within the purview of the term "ordinary course of trade," do not "require that any usual transactions be disregarded"; that it did not construe "ordinary course of trade" as limited to sales for exportation to the United States but that it should be construed as embracing the usual practices appertaining to all sales of such or similar merchandise; that where sales are made in the regular course of

business, it is appropriate to consider such transactions to ascertain the price which fairly reflects the market value of the merchandise and that it was a pertinent and proper inquiry to look into and consider the customary practices in Canada with regard to the sale of steel strapping of the class or kind here involved.

We find ourselves in harmony with the view expressed by the majority that all sales in the ordinary course of trade are proper for consideration in ascertaining the price which fairly reflects the market value of the merchandise and that evidence of price, and hence of the value of goods in the foreign market, is relevant to the ultimate determination of the export value of imported merchandise within the ambit of section 402(b) of the Tariff Act of 1930, as amended, supra, in the case of sales to selected purchasers.

The record herein, in my opinion, sufficiently establishes sales in the home market at the same price as for export to the United States with the exception of the T.V.A. Tax. Such tax is not an expense in selling for export since it is applicable only to sales in the home market. The statements of the affiant as to the prices he sold the merchandise at in the home market and for export and the existence of a French production tax are not conclusions but statements of fact. A qualified witness is competent to make such statements without the necessity of providing corroborating evidence such as price lists, lists of sales or a copy of the foreign law. *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, R.D. 9311 (1959). In view of the result reached herein, I do not deem it necessary to incorporate the record in Abstract 63864, *supra*. Motion to incorporate is hereby denied.

Accordingly the court finds:

1.  The merchandise covered by this appeal for reappraisement consists of diving masks exported from France.

2.  The merchandise is not specified on the final list promulgated by the Secretary of the Treasury under section 6(a) of the Customs Simplification Act of 1956.

3.  During the period in question said merchandise was sold for export to the United States only to the U.S. Divers Co. at the same price that it was sold for home consumption.

4.  Such sales were in the ordinary course of trade, in the usual wholesale quantities and without restrictions as to disposition or use of the merchandise.

5.  During the period in question a French Production Tax had to be added on to the price when this merchandise was sold for home consumption, being a cost incurred in selling in France not incurred in selling to the United States.

725

The court therefore concludes:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise covered by the instant appeal for reappraisement.

2. The invoice unit values of the masks fairly reflect the market values of the said masks.

3. The invoice values are the export values of said masks.

Judgment will be entered accordingly.